FILED
2013 Aug-22  PM 02:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| KIMBERLY S. BARTES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 6:12-cv-0992-LSC |
| | ) | |
| CAROLYN COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

I.      Introduction

The plaintiff, Kimberly Bartes, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Insurance Benefits ("DIB"). Ms. Bartes timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Bartes was forty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has completed three years of college with past relevant work as a receptionist, a human resources clerk, and a rail car/semi-truck loader. (Tr. at 25, 65, 146, 151.) Ms. Bartes claims that she became disabled on November 6, 2007, due to diabetes, back problems, and arthritis in her right hip. (Tr.

at 145.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. See 20 C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 404.1520(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made

and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Bartes meets the nondisability requirements for a period of disability and DIB and was insured through the date of her decision. (Tr. at 20.) She further determined that Ms. Bartes has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's "degenerative disc disease of the lumbar spine with status post fusions" is a severe impairment based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that this impairment neither meets nor medically equals any of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 21.) The ALJ determined that Ms. Bartes has the following RFC: "to perform less than the full range of sedentary work . . . with the ability to lift and/or carry 10 pounds frequently and occasionally, and sit/stand 1 to 2 minutes every hour." (Tr. at 22.)

According to the ALJ, Ms. Bartes is capable of performing her past relevant work as a human resources assistant/clerk and receptionist, as this work does not require the performance of work-related activities precluded by her RFC. (Tr. at 24.) The ALJ concluded her findings by stating that Ms. Bartes "has not been under a disability, as defined in the Social Security Act, from November 6, 2007, through the date of this decision." (*Id.*)

II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See*

*Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion

Ms. Bartes alleges that the ALJ's decision should be reversed and in the alternative remanded for three overarching reasons. First, she believes that the ALJ's

RFC assessment indicating that she could perform sedentary work was erroneous for two reasons: 1) the ALJ improperly relied on an RFC assessment form submitted by a non-examining state agency single decision-maker; and 2) the physical and functional assessments submitted by her two treating physicians do not support the ALJ's RFC assessment.  Second, Plaintiff asserts that the ALJ failed to appropriately articulate her reasons for disregarding or otherwise minimizing the opinions of two of Plaintiff's treating physicians.  Finally, Plaintiff contends that considering the newly-obtained evidence of her disability that she presented to the Appeals Council, it was error for the Appeals Council to deny her an opportunity for substantive review of the ALJ's decision and to deny the ALJ the opportunity to reconsider her opinion. (Doc. 11 at 15.)

### A.    The ALJ's Determination that Plaintiff Could Perform Sedentary Work

#### 1.    The ALJ's Reliance on the Opinion of the Non-Examining State Agency Single Decision-Maker

Plaintiff contends that the ALJ should not have considered the opinion of Ms. Depree Williams, a non-examining state agency single decision-maker ("SDM"). Federal law permits states to test modifications to the disability determination process. *See* 20 C.F.R. § 404.906.  As part of an experiment to expedite the processing of applications, SDMs may make initial disability determinations in Alabama without the

signature of a medical consultant.  *See* Modifications to the Disability Determination

Procedures; Extension of Testing of Some Disability Redesign Features, 71 Fed. Reg.

45890, 2006 WL 2283653 (Aug. 10, 2006); 20 C.F.R. § 404.906.  Here, the SDM

considered the record as of October 29, 2009, and completed a "Physical Residual

Functional Capacity Assessment."  (Tr. at 421-28.)  It is the Commissioner's policy

that SDM-completed forms are not opinion evidence and, upon appeal from an initial

denial, are entitled to no weight.  *See* Program Operations Manual System (POMS)

DI 24510.05, 2001 WL 1933365.  Despite this policy, the ALJ treated the SDM's

assessment as an opinion by a state agency medical consultant and considered it in her

assessment of Plaintiff's RFC.  (Tr. at 22, 24.)  Referring to the SDM's assessment,

the ALJ stated she "adopts the physical assessment of the State agency medical

consultant" and further stated that her RFC was supported, in part, by the SDM's

physical assessment.  (Tr. at 22, 24.)

        The Commissioner concedes that the ALJ should not have considered the

SDM's assessment but argues that the ALJ's error was harmless given the other

substantial evidence of record.  *See Graham v. Apfel*, 129 F.3d 1420 1423 (11th Cir.

1997); *Castel v. Astrue*, 355 F. App'x 260, 265-66 (11th Cir. 2009) (concluding ALJ did

not err in referring to a report that may have been completed by a SDM where the ALJ

did not place great weight on the report, the report merely confirmed the objective medical evidence, and thus any error was harmless); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine to an ALJ's determination in a social security case).

As an initial matter, the ALJ's RFC finding is not entirely consistent with the SDM's assessment. While the ALJ did adopt the part of the SDM's assessment regarding Plaintiff's ability to lift and/or carry 10 pounds frequently or occasionally (tr. at 22, finding no. 5; tr. at 422), the ALJ did not include the postural or environmental limitations assessed by the SDM. (Tr. at 22, Finding No. 5; Tr. at 423, 425.) Additionally, the ALJ included an assessment that Plaintiff needed to sit/stand 1 to 2 minutes every hour when the SDM did not have a similar assessment. (*Compare* Tr. at 421-48 *with* Tr. at 22, Finding No. 5.) The ALJ was not prohibited from reaching her conclusion regarding Plaintiff's ability to perform less than the full range of sedentary work simply because the SDM also reached that conclusion. *See Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902-03 (11th Cir. 2012) (noting the ALJ was not prohibited from reaching a conclusion simply because non-treating physicians also reached it.)

Further, the Court agrees with the Commissioner that the ALJ's error in

considering the SDM's assessment was harmless because there is other substantial evidence of record indicating that Plaintiff was not disabled.  The ALJ noted that the medical record reflected a gradual improvement in Plaintiff's pain and limitations. (Tr. at 23.)  For example, the ALJ stated that following a November 7, 2007, lumbar fusion and pedical screw implant, Plaintiff reported improvement in her left-sided pain.  (Tr. at 20, 233, 237.)  However, after falling out of bed about a month after the surgery, Plaintiff complained of right hip and leg pain.  (Tr. at 20, 233, 478.) Subsequently, in May 2008, Plaintiff underwent removal of the right side pedical screws. (Tr. at 20, 478-79.) Plaintiff's spine surgeon, Dr. Said Osman, noted in July 2008 that Plaintiff walked slowly, but without a limp, and had no objective neurological deficit. (Tr. at 21, 148, 291.) An electrodiagnostic study in August 2008 revealed Plaintiff had a normal nerve conduction velocity (NCV). (Tr. at 21, 282.) Plaintiff's electromyography (EMG) study revealed only mild bilateral L5-S1 irritation with no clear radiculopathy. (Tr. at 21, 282.)  In October 2008, Dr. Lloyd Dyas and Dr. Cyrus Ghavam, with the Orthopaedic Center, examined Plaintiff and reported her gait was normal, she could walk on her heels and toes without any difficulty, she had full range of motion in her hips, knees, and ankles. (Tr. at 21, 608-09.) They found no intrinsic joint pain, deformity, muscle fasciculation, or atrophy. (Tr. at 608).

Neurologically, they found Plaintiff had some "breakaway weakness" and diminished L3-L5 sensation on the left and diminished L-4 sensation on the right but Plaintiff's deep tendon reflexes were symmetric and normoactive at the patella and Achilles, and she had a negative straight leg raising test. (Tr. at 22, 608). In February, June, September, and November 2009, Dr. Dyas noted Plaintiff was doing well with opiate pain management. (Tr. at 575, 581, 587, 590.) In June 2009, Dr. Ghavam noted Plaintiff had chronic back pain but was making slow but definite progress and could increase her activities as tolerated. (Tr. at 22, 618.)

The ALJ also considered the opinion evidence. (Tr. at 23.) *See* 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *5.  On July 5, 2010, Dr. John Boswell, Plaintiff's primary care provider, opined Plaintiff could sit, stand, and walk, each up to 6 hours per day; lift, carry, push or pull up to 10 pounds; and had no limitations with handling (gross), fingering (fine), or feeling (skin receptors).  (Tr. at 23, 604-05.)  He opined Plaintiff should never bend, climb or reach, but could kneel, squat and stoop up to 2 hours.  (Tr. at 604.)  Two weeks later, on July 19, 2010, Dr. Dyas opined Plaintiff could lift, carry, push or pull up to 10 pounds; sit, stand, and walk each up to two hours; and had no limitations with handling (gross), fingering (fine), or feeling (skin receptors). (Tr. at 23-24, 622-23.)  He also opined Plaintiff

could never bend, climb, reach, squat, stoop, crawl or kneel. (Tr. at 622.) The ALJ stated Dr. Dyas' and Dr. Boswell's opinions were "probative" and "do not negate [Plaintiff's] ability to do sedentary work." (Tr. at 23.)

The ALJ also considered Plaintiff's testimony concerning activities of daily living. (Tr. at 23.) *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (the ALJ may consider a claimant's daily activities when determining the issue of RFC). Plaintiff stated that upon awakening, she went downstairs and prepared breakfast for her three sons, ages 16 months, six and seven years. (Tr. at 23, 46.) Plaintiff's mother, who does not live with Plaintiff, comes to Plaintiff's home during most days to help care for the youngest child. (Tr. at 23, 46.) Plaintiff then prepares lunch consisting of soup, sandwich, or pizza. (Tr. at 23, 47, 183.) Plaintiff spends two hours in the afternoon helping her older children with school work and may run errands, such as going to town to get milk. (Tr. at 47-49.) In a Function Report Plaintiff submitted as part of her disability claim, she stated she was able to do laundry, change the bed, and do light duties that kept her off her feet. (Tr. at 183.) She went outside daily, either to walk or ride in a car. (Tr. at 184.) She grocery shopped up to an hour every other week. (Tr. at 184.) Plaintiff regularly went to church and to her medical appointments (Tr. at 185.)

The aforementioned evidence supports the ALJ's RFC finding that Plaintiff could perform sedentary work with the ability to lift and or carry 10 pounds "frequently and occasionally," and "sit/stand 1 to 2 minutes every hour." (Tr. at 22, Finding No. 5.)  Notably, Plaintiff's physicians reported she could lift, carry, push or pull up to 10 pounds, (tr. at 604-05, 622-23), which is consistent with sedentary work. *See* 20 C.F.R. § 404.1567(a).  Her physicians also indicated Plaintiff would need to alternate between sitting and standing during the workday. (Tr. at 604-05, 622-23.) The ALJ accepted Plaintiff's testimony that she had difficulty sitting or standing for extended periods.  (Tr. at 45.) Accordingly, the ALJ's RFC finding recognized Plaintiff needed to change positions from time to time. (Tr. at 22.) Thus, the ALJ cited substantial evidence, supported by the record, to support her RFC finding.

Considering this evidence, assuming the ALJ's reliance on the SDM's assessment was error, any such error was harmless and does not require remand because the ALJ's RFC assessment, which is more restrictive than the SDM's assessment, is still supported by substantial evidence of record. *See Graham*, 129 F.3d at 1423.  Therefore, requiring remand for the ALJ to formulate the RFC without considering the SDM's opinion would not result in a different RFC. *See N.L.R.B. v. Wyman-Gordon, Co.*, 394 U.S. 759, 766 n.6 (1969) (when "remand would be an idle

and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game").

     2.    RFC Assessments Prepared by Plaintiff's Treating Physicians

Plaintiff also asserts that the physical and functional assessments of Dr. Dyas, Plaintiff's orthopedic surgeon, and Dr. Boswell, Plaintiff's primary care provider, do not provide the requisite substantial evidence to support the ALJ's RFC assessment, because their indications pertaining to Ms. Bartes's RFC do not specifically say that Plaintiff could lift and/or carry up to 10 pounds "frequently" or "occasionally," as the ALJ's RFC assessment states. (Tr. at 148.); *See* Exhibit 22 F, Doc. 6-12, R. 604, Exhibit 24F, Doc. 6-12, R. 622-23.

The ALJ found that Plaintiff retains the RFC to perform less than the full range of sedentary work and that she has the ability to lift and/or carry 10 pounds frequently and occasionally, and to sit or stand 1 to 2 minutes every hour. (Tr. at 22.) As explained in section III-A-1, *supra*, the ALJ's RFC assessment is supported by substantial evidence of record, including the opinion testimony of Drs. Dyas and Boswell. On July 5, 2010, Dr. Boswell opined Plaintiff could sit, stand, and walk, each up to 6 hours per day; lift, carry, push or pull up to 10 pounds; and had no limitations with handling (gross), fingering (fine), or feeling (skin receptors). (Tr. at 23, 604-05.)

He opined Plaintiff should never bend, climb or reach, but could kneel, squat and stoop up to 2 hours. (Tr. at 604.) Two weeks later, on July 19, 2010, Dr. Dyas opined Plaintiff could lift, carry, push or pull up to 10 pounds; sit, stand, and walk each up to two hours; and had no limitations with handling (gross), fingering (fine), or feeling (skin receptors). (Tr. at 23-24, 622-23.)  He also opined Plaintiff could never bend, climb, reach, squat, stoop, crawl or kneel. (Tr. at 622.) The ALJ stated that Dr. Dyas's and Dr. Boswell's opinions were "probative" and "do not negate [Plaintiff's] ability to do sedentary work." (Tr. at 23.)

Contrary to Plaintiff's argument, the postural and functional limitations assessed by Dr. Dyas and Dr. Boswell are in fact consistent with sedentary work. Both of these physicians opined that Plaintiff could lift, carry, push or pull up to 10 pounds. (Tr. at 604-05, 622-23).  This characterization is consistent with sedentary work, despite the fact that the doctors did not use the words "frequently" or "occasionally."  *See* 20 C.F.R. § 404.1567(a) (stating physical requirements for sedentary work). Her physicians also indicated Plaintiff would need to alternate between sitting and standing during the workday. (Tr. at 604-05, 622-23.)  The ALJ accepted Plaintiff's testimony that she had difficulty sitting or standing for extended periods. (Tr. at 45.) Accordingly, the ALJ's RFC finding recognized Plaintiff needed

to change positions from time to time. (Tr. at 22.)  In sum, the ALJ's RFC assessment is in fact supported by the assessments of Drs. Dyas and Boswell, as well as other substantial evidence of record, as explained *supra*.

      B.      Weight Given to Treating Physicians' Opinions

      Plaintiff next argues that the ALJ failed to state and explain the weight she gave to the opinions of her treating physicians, Drs. Dyas and Boswell. (Doc. 11 at 13.)

      As already noted, Dr. Boswell opined in his July 5, 2010, functional capacity assessment that Plaintiff could sit, stand, and walk, each up to 6 hours per day; lift, carry, push or pull up to 10 pounds; and had no limitations with handling (gross), fingering (fine), or feeling (skin receptors). (Tr. at 604-05.) Dr. Boswell continued that Plaintiff should never bend, climb, or reach, but could kneel, squat and stoop up to 2 hours. (*Id.*) Dr. Boswell stated Plaintiff "is not a candidate for full time or regular part time employment due to physical limitations and chronic pain." (Tr. at 605.)

      In February 2010, as part of Plaintiff's CIGNA long term disability claim, Dr. Dyas opined that Plaintiff could not even do sedentary work. (Tr. at 600.) He stated Plaintiff was homebound except to attend doctors' visits. (Tr. at 600.) He opined that Plaintiff could sit, stand, and walk each for less than 2.5 hours in an 8-hour workday. (Tr. at 602.) He also opined that Plaintiff could lift up to 10 pounds and

was not able to engage in postural activities such as balancing, stooping, and crawling. (Tr. at 602.) As noted above, on July 19, 2010, Dr. Dyas completed a functional capacity form in which he opined that Plaintiff could lift, carry, push or pull up to 10 pounds; sit, stand and walk each up to two hours; and had no limitations with handling (gross), fingering (fine), or feeling (skin receptors). (Tr. at 622-23.) He further opined that Plaintiff could never bend, climb, reach, squat, stoop, crawl or kneel. (Tr. at 622.)

Though not controlling on whether Plaintiff is disabled, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commission of Social Security*, 363 F. 3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F. 3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a

contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F. 3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F. 3d at 1440); *see also Edwards v. Sullivan*, 937 F. 2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court also notes that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the physicians' evaluations of the plaintiff's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

Here, the ALJ specifically considered the functional assessments of Dr. Boswell and Dr. Dyas. (Tr. at 23.) The ALJ wrote that "[w]hile certainly probative,"

> these assessments do not negate the ability for sedentary work as described [in the ALJ's RFC] such that Dr. Boswell concluded the claimant could sit 2-6 hours frequently, stand 2-6 hours frequently, walk 2 to 6 hours frequently, infrequently squat/stoop and kneel, lift/carry/push/pull up to 10 pounds, and unlimited handle, finger and feel. (Exhibit 22F.) Similarly, in his most recent assessment on July 19, 2010, Dr. Dyas opined the claimant could sit 0-2 hours infrequently, stand 0-2 hours infrequently, walk 0-2 hours infrequently, lift/carry/push/pull up to 10 pounds, and handle, finger, and feel. (Exhibit 24F.)

(Tr. at 23-24.) Because the ALJ found their assessments "probative," she clearly afforded them some weight. Her failure to specifically discuss her rejection of Dr. Dyas's and most of Dr. Boswell's postural limitations was at most harmless error. Dr. Dyas's and Dr. Boswell's opinions prohibiting Plaintiff from climbing ladders or stairs, balancing, kneeling, crouching, or crawling does not detract from the ALJ's RFC finding as those activities are not usually required in sedentary work. (Tr. at 603-04, 622.) *See* SSR 96-9p, 1996 WL 374185, at *7 ("Postural limitations or restrictions related to such activities as climbing ladders, ropes or scaffolds, balancing, kneeling, crouching, or crawling . . . are not usually required in sedentary work.") However, an ability to stoop occasionally, i.e., from very little up to one-third of the time, is required for most unskilled sedentary occupations. *See id.* While Dr. Dyas opined that Plaintiff could not stoop, (tr. at 622), Dr. Boswell opined that Plaintiff could stoop up to two hours per day, which again, is consistent with sedentary work. (Tr. at 604.)

The ALJ clearly gave some weight to Dr. Boswell's assessment of Plaintiff's ability to stoop as she mentioned that specific limitation in her discussion of the opinion evidence that supported her RFC finding.  (Tr. at 23, 604.)  In any event, the ALJ found, with the aid of a vocational expert, that Plaintiff could perform her past relevant work as a human resources assistant/clerk and receptionist as she performed it and as generally performed in the national economy.  (Tr. at 24.)  Importantly, Plaintiff indicated that those jobs did not require her to climb, stoop, kneel, crouch, crawl or reach.  (Tr. at 170-71.)

Finally, the ALJ did not err in explicitly rejecting Dr. Dyas's and Dr. Boswell's opinions that Plaintiff could not work, because opinions such as those are reserved to the Commissioner and are not determinative.  20 C.F.R. §§ 404.1527(e), 416.927(d).  Further, the ALJ noted that these conclusions that Plaintiff could not work are inconsistent with the rest of the doctors' opinions indicating that Plaintiff could in fact perform the physical requirements of sedentary work.  *See Edwards*, 937 F. 2d at 583-84 (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

While the ALJ could have better articulated her reasons for giving Dr. Dyas's and Dr. Boswell's opinions the weight that she assigned to them, because the activities

that they prohibited are not usually required in sedentary work and the ability to stoop occasionally assessed by Dr. Boswell is usually required for sedentary work, it was not an error to reject those limitations without a lengthy explanation. *See* 20 C.F.R. § 404.1527(d).

D.     Additional Evidence Submitted to the Appeals Council

After the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council ("AC") consisting of a letter dated October 28, 2010, containing a sworn statement of Dr. Dyas, and medical records of Dr. Ahmad Shikhtholth at Valley Pain Clinic from August 31, 2010, to October 21, 2010.  (*See* Exhibit 16E, Doc. 6-7, R. 219-222.)  Plaintiff challenges the decision of the AC to deny review of her case despite her submission of this additional evidence and claims that the evidence, when added to the record as a whole, renders the Commissioner's decision erroneous, as they demonstrate that substantial evidence did not support the ALJ's decision that she was not disabled. (Doc. 13 at 16.)

A claimant is generally allowed to present new evidence at each stage of the administrative process, including to the AC. *See* 20 C.F.R. § 404.900(b).  The AC has discretion not to review the ALJ's denial of benefits.  *See* 20 C.F.R. § 404.970(b). However, the AC "must consider new material, and chronologically relevant evidence

and must review the case if the ALJ's action, findings, or conclusion is contrary to the weight of evidence currently of record." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). *See also* 20 C.F.R. § 404.970 ("The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.").  If the AC refuses to consider new evidence submitted by a claimant and denies review, its decision is subject to judicial review because it is an error of law. *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 743 (11th Cir. 2008) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). When reviewing the AC's denial of review, the Court must "look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the AC must consider in making its decision whether to review an ALJ's decision." *Falhe v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998).

In this case, the AC gave at least some consideration to Plaintiff's new evidence. The AC stated that it considered the reasons Plaintiff disagreed with the ALJ's decisions as well as the new evidence. (Tr. at 1-2, 4-5, 219-22.) Specifically, the AC stated that Plaintiff's new evidence did not warrant review because it does not address the time period considered by the ALJ. (*Id.*) As noted above, the AC only has an

obligation to review the evidence that is relevant to the time period considered by the ALJ, which in this case was Plaintiff's alleged onset date of November 6, 2007 through September 3, 2010, the date of the ALJ's decision. (Tr. at 25, 128.)  *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) (the relevant question before the court is whether Plaintiff was "entitled to benefits during a specific period of time, which was necessarily prior to the date of the ALJ's decision"); *Ingram*, 496 F.3d at 1261; 20 C.F.R. § 404.970.   Therefore, the AC did not err by failing to *consider* the new evidence presented by Plaintiff.

Plaintiff, however, claims that the new evidence indicates further and substantial evidence confirming a disability, which began in November of 2007. (Doc. 11 at 15.)   The Commissioner, on the other hand, raises the argument that the evidence is not material as it is cumulative of evidence considered by the ALJ. (Doc. 13 at 18.)  With regard to the sworn statement of Dr. Dyas, he merely discusses again the functional capacity assessments he prepared for Cigna as part of Plaintiff's DIB claim as well as the treatments notes already in the record. (Tr. at 600-01, 622-23, 716.) While Dr. Dyas now claims that Plaintiff cannot lift more than 5 pounds repetitively, (tr. at 717), it is unclear why he changed his opinion or when Plaintiff became unable to lift up to 10 pounds.  (Tr. at 622.)  In the sworn statement, Dr. Dyas

also said, "I can't think of many patients that—I can't think of any patients that are less able to provide a forty-hour week than Ms. Bartes." (Tr. at 716.)  However, Dr. Dyas's statement that Plaintiff was not employable is not entitled to controlling weight as it encroaches on an issue reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1)-(3).  Thus, the Court finds that the evidence submitted by Dr. Dyas is not material as it is merely cumulative of evidence considered by the ALJ.

With regard to the records provided by Dr. Shikhtholth, even if they were chronologically relevant, which they are not, they do not detract from the substantial evidence supporting the ALJ's decision. Upon a referral from Dr. Boswell, on August 31, 2010, Dr. Shikhtholth examined Plaintiff, (tr. at 738-39), and noted she had a slow, antalgic gait but had a normal range of motion with pain on extension. (Tr. at 738.) Although Plaintiff had a positive left straight leg raising test, she could toe and heel walk normally. (Tr. at 738.)  Radiology reports on September 8, 2010, revealed Plaintiff had no acute abnormality at L5-S1 and a normal appearing left hip.  (Tr. at 741-42.) On September 14, 2010, Dr. Shikhtholth recommended Plaintiff undertake a home-based exercise program along with posture and mechanics training.  (Tr. at 732.)  This evidence does not undermine the ALJ's RFC assessment.

In sum, the aforementioned evidence is not "relevant and probative so that

there is a reasonable probability that it would change the administrative result."

*Milano v. Bowen*, 809 F. 2d 763, 766 (11th Cir. 1987).  Even considering the additional evidence submitted to the Appeals Council along with the record as a whole, substantial evidence supports the Commissioner's conclusion that Plaintiff was not disabled on or before September 3, 2010, the date of the ALJ's decision.

IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Bartes's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 22nd day of August 2013.

L. Scott Coogler
United States District Judge
[160704]